David E. Azar (Cal. SBN 218319)
david@azarlawgroup.com
Azar Law Group, APC
2355 Westwood Blvd. #311
Los Angeles, CA 90064
Phone: 213-915-8870

Attorneys for Defendants
REBEL HOLDINGS, LLC; JAY RIFKIN

[ADDITIONAL COUNSEL ON
SIGNATURE BLOCK]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA—WESTERN DIVISION

| | |
|---|---|
| PACIFIC GREEN, LLC, a Delaware limited liability company; and BIG TREE HOLDINGS, LLC, a Delaware limited liability company,<br><br>        Plaintiffs,<br><br>        v.<br><br>PAUL FIORE, an individual; JAY RIFKIN, an individual; ALEX REYTER, an individual; ONE ELEVEN ADVISORS, LLC, a California limited liability company; REBEL HOLDINGS, LLC, a California limited liability company, TUDOR CAPITAL, LLC, A Delaware limited liability company; HILLS GROUP, LLC, a California limited liability company; and DOES 1 through 100, inclusive, | Case No. 2:22-cv-08949-SB-MAR<br><br>Removed to federal court on 12-09-22<br><br>**REPLY BY DEFENDANTS REBEL HOLDINGS LLC, JAY RIFKIN, AND HILLS GROUP, LLC IN SUPPORT OF THEIR MOTION TO DISMISS FOURTH AMENDED COMPLAINT, MOTION TO STRIKE PORTIONS THEREOF, AND JOINDER IN MOTIONS TO DISMISS FILED BY OTHER DEFENDANTS**<br><br>Date:  July 20, 2023<br>Time:  10:00 a.m.<br>Courtroom:  6C<br>Judge:  Hon. Fernando M. Olguin |

REPLY BY DEFENDANTS' REBEL HOLDINGS, RIFKIN, AND HILLS GROUP ISO MOTION
TO DISMISS 4AC AND TO STRIKE PORTIONS THEREOF

1   Defendants.

2   and

3

4   HILLS ONE, LLC, a Delaware limited
    liability company,

5

6           Nominal Defendant

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY BY DEFENDANTS' REBEL HOLDINGS, RIFKIN, AND HILLS GROUP ISO MOTION
TO DISMISS 4AC AND TO STRIKE PORTIONS THEREOF

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..........................................................................1

II.     PLAINTIFFS' FUTILE ATTEMPTS TO PLEAD AROUND
THE HILLS ONE, LLC AGREEMENT ......................................4

     A.     Plaintiffs Cannot Allege Their Justifiable Reliance on
Defendants' Pre-Agreement Representations. .....................4

           1.     The Complaint Alleges that Part of the Business of
Hills Group Was the Business of Hills One, and Thus
Plaintiffs' Cannot Overcome the Anti-Reliance
Language. .................................................................5

           2.     The Operating Agreement Contains Facts That
Contradict The FAC and Negate The Element of
Reliance ...................................................................9

           3.     Plaintiffs' Claims That Defendants Did Not Spend
"Enough" Time Are Impermissibly Vague and
Conclusory and Must Be Dismissed .......................16

           4.     The Anti-Reliance Clause Applies to the Post-July
2018 Representations, Directly and As Part of the
Plausibility Analysis ...............................................17

III.    THE CIVIL RICO CLAIM STILL FAILS .................................18

     A.     Under *Shulman v. Kaplan*, Plaintiffs Lack Standing to
Allege a RICO Violation. ....................................................18

     B.     Plaintiffs Posit Mere Speculation for Actual and Proximate
Causation. ...........................................................................21

     C.     Plaintiffs Do Not Cite Legal Authority to Show an
Actionable Pattern. .............................................................23

           1.     Plaintiffs New Allegations Fail to Establish The
Continuity Requirement (Open-Ended Continuity).23

           2.     Plaintiffs' Theory of a "Closed-Ended" RICO
Scheme also Fails ...................................................23

1

IV.    CONCLUSION ...............................................................24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TABLE OF CONTENTS

1
2

# **TABLE OF AUTHORITIES**

3

**Cases**

4    *Abry Partners V L.P. v. F & W Acquisition*, 891 A. 2nd 1032 (Del Ch.
5        2006) ...................................................................................................10
6    *Anza v. Ideal Steel Supply Co*., 547 U.S. 460 (2006) ......................................21
7    *Corley v. Rosewood Care Ctr., Inc*., 142 F.3d 1041, 1049 (7th Cir. 1998)...................23
8    *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)..............................6
9    *Damann Realty Corp. v. Harris* 5 NY 2d 317 (1959) ....................................10
10   *Drake v. Toyota Motor Corp*., No. 2:20-CV-01421-SB-PLA, 2020 WL
11       7040125 at *27 (C.D. Cal. Nov. 23, 2020) ...............................................15
12   *Edinburgh Hldgs., Inc. v. Educ. Affiliates, Inc*., 2018 Del. Ch. LEXIS
13       182, 2018 WL 2727542, at *12 (Del. Ch. June 6, 2018) ..........................9
14   *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260,
15       1265 (D.C. Cir. 1995)..........................................................................25
16   *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc*., 831 F.3d
17       815, 828 (7th Cir. 2016) .......................................................................23
18   *Great Lakes Chem Corp. v. Pharmacia* 788 A. 2d 551-556 (2001).............................10
19   *Grubbs v. Sheakley Grp., Inc*., 807 F.3d 785, 805 (6th Cir. 2015)..............................25
20   *H.J. Inc. v. Northwestern Bell Telephone Co*., 492 U.S. 229, 241 (1989) .........23, 25, 26
21   *Hemi Group, LLC v. City of New York*, 559 U.S. 1 (2010) ............................................22
22   *Holmes v. Secs. Investor Prot. Corp*., 503 U.S. 258, 267-74 (1992)..............................21
23   *In re: IBP, Inc. S'Holders Litig.* 789 A. 2d. 14, 72-73 (2001) .......................................10
24   *Kalitta Air, LLC v. GSBD & Assocs*., 591 F. App'x 338, 344 (6th Cir.
25       2014)........................................................................................................22
26   *Key Compounds LLC v. Phasex Corporation*, 2021 WL 3891586, at *8
27       (D. Or. 2021)...........................................................................................19
28   *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 998 (9th Cir. 2018)......................5

*Malvino v. Delluniversita*, 840 F.3d 223, 233 (5th Cir. 2016) ........................................26

*OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*,

    157 Cal. App. 4th 835, 872 (2007) ...............................................................17

*Patel v. Parnes*, 253 F.R.D. 531, 546-50 (C.D. Cal. 2008) ...............................................6

*Shulman v. Kaplan*, 58 F.4th 404, 406 (9th Cir. 2023)...................................................18

*Swartz v. KPMG, LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ......................................15

*Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 615 (6th Cir. 2004) ...............................21

*Turner v. Cook*, 362 F.3d 1219, 1230 (9th Cir. 2004) ........................................25, 26

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 782 (7th Cir.

    1994) ...........................................................................................................23, 25

## STATUTES

18 U.S.C. § 1961(1)(D) ..................................................................................16

18 U.S.C. § 1964(c) .......................................................................................17

21 U.S.C. § 802 ..............................................................................................16

21 U.S.C. § 812 ..............................................................................................16

Cal. Code Civ. Proc. § 369.5(a) .......................................................................3

Cal. Corps. Code § 18035(a) ...........................................................................3

ORS 475B.227(4)(a) ......................................................................................17

## RULES

Fed. R. Civ. P. 9(b) ........................................................................................22

Fed. R. Evid. 201(b) .......................................................................................17

TABLE OF AUTHORITIES

# I.     INTRODUCTION

Plaintiffs' opposition makes attorney Jacob Stein sound like an unknowing, unwitting, gullible person who just wrote checks based on oral representations and business plans without doing any due diligence before or after Plaintiffs' original investment in July 2018.  That is not plausible.  It is more plausible that Stein is who he says he is: the super sophisticated managing partner of an international law firm, who is an expert in investment transactions, asset protection, and entity structures, and who would not invest funds for which he had a fiduciary duty unless he did sufficient diligence and made an educated decision about the risks versus rewards.

The most plausible inference is that this is a strike suit to use litigation costs and the threat of RICO treble damages to recapture some of the investment losses due to external circumstances.  This fifth version of the complaint still says nothing about Stein's diligence and leaves out allegations about material facts presumably to minimize pleading problems – the most conspicuous omission is not addressing the criminal complaint that shut down the main operating subsidiary due to negligence by a third party (discussed in the moving papers and Fiore reply through judicial notice as undisputed matters of public record).  Plaintiffs' only response, after months of briefing, is to offer various speculations that are improper inferences because they have no grounding to allegations in the complaint or facts for which the Court could take judicial notice (such as Plaintiffs' supposition that the management team could have, or should have had, insurance to cover potential processing errors by their outside vendor, or that those processing errors are the fault of the management team in some respect).  Some of the other omitted factual matters that contradict the allegations of the FAC are expected to be part of a Rule 11 motion that is currently in the safe harbor period and is expected to be filed before the hearing date for this motion.

In the meantime, the opposition fails to rebut the two primary issues raised by these moving Defendants.

REPLY BY DEFENDANTS' REBEL, RIFKIN, AND HILLS GROUP ISO MOTION TO DISMISS
4AC AND TO STRIKE PORTIONS THEREOF

First, Plaintiffs fail to rebut the argument that they were investing in a Cannabis business and thus lack RICO standing under *Shulman v. Kaplan*, 58 F.4th 404, 406 (9th Cir. 2023).  Plaintiffs do not deny that the Operating Agreement contemplates investment in a cannabis business, that the Complaint refers to it in multiple places, or that legal CBD products are the final result of a business that starts with illegal cannabis (since there is no purpose of buying processing equipment if there is no cannabis/HEMP to process).  Even the name of one of the documents that Plaintiffs say they relied upon – the Hemp and *Cannabis* Opportunities Fund – uses the word cannabis, and the February emails with Stein refer to Cannabis investment. Additionally, Plaintiffs still fail to plausibly allege RICO causation or pattern.

The second issue is the Hills One Operating Agreement itself, and its various representations, warranties, terms, and its integration clauses.  To try to avoid the Agreement, Plaintiffs argue that they did not rely on statements about Hills One, the entity they invested in.  Instead, Plaintiffs say they relied on statements about Hills Group, an entity they did not invest in, and which was another member of Hills One and the manager (subject to Plaintiff's oversight and approval rights). As explained in detail below, that is not plausible, and contradicts allegations of the FAC and statements in the operating Agreement.  Plaintiffs often refer to the "business" or "enterprise" generally as including Hills Group and Hills One to try to defend other elements of their claims, such as causation.  Plaintiffs cannot have it both ways, and Defendants (and the Court) should not have to try to figure it out or try to harmonize these allegations.

In any event, Plaintiffs seem to concede that the Agreement bans their reliance on any representations about Hills One's business, operations, assets, liabilities, results of operations, financial condition, *prospects*, and the purchase of membership in Hills

- 2 -

One. *See* opposition page 16 (bullet points) and the sentences immediately before and after the bullet points.  That simplifies the analytical question for the Court.  In Defendants' view, the question for the Court appears to be whether it finds Plaintiffs' position plausible under the pleading standards, or whether the more plausible inference is that (1) Plaintiffs understood that some parts of the business of Hills Group was going to be part of Hills One, (2) Plaintiffs therefore represented and warranted that they did their diligence as to those parts of Hills Group that would become part of the assets and future prospects of Hills One, and (3) Plaintiffs are bound by the Agreement's language that they did not rely on statements by Defendants about the parts of Hills Group that would become part of Hills One.

Additionally, as explained below, Plaintiffs' claim of reliance also fails if any factual information or statement in the Agreement is inconsistent with any statement on which Plaintiffs purport to rely.  That is because an inconsistency in the Agreement would be a red flag that would have caused an experienced attorney like Jacob Stein to stop and investigate further.

Finally, as explained in the moving papers, the FAC still fails to allege fraud with the required specificity as to any statements after the Operating Agreement was signed and the first investment made.  So those allegations should be stricken and disregarded/held as deficient, regardless of whether they fail due to the Agreement or for failure to meet the pleading standards for fraud.

Moving Defendants focus this reply on the above arguments and refer the Court to their moving papers and the replies of other defendants as to other issues.

REPLY BY DEFENDANTS' REBEL, RIFKIN, AND HILLS GROUP ISO MOTION TO DISMISS 4AC AND TO STRIKE PORTIONS THEREOF

## II. PLAINTIFFS' FUTILE ATTEMPTS TO PLEAD AROUND THE HILLS ONE, LLC AGREEMENT

### A. Plaintiffs Cannot Allege Their Justifiable Reliance on Defendants' Pre-Agreement Representations.

Plaintiffs' first four causes of action are all misrepresentation-based claims that require reasonable/justifiable reliance.  Defendants have argued in the motion to dismiss that Plaintiffs cannot meet the justifiable reliance element because the Agreement disclaims precisely such reliance by its representations and warranties.  MTD at 7-10.

Defendants also establish that the Agreement itself contains facts that are inconsistent with what Plaintiffs alleged had been misrepresented to them.  In other words, if Defendants actually made certain representations to Plaintiffs that Plaintiffs considered to be material, then contradictory information -- the truth -- was revealed in the Agreement which were inconsistent with the purported representations.  Thus Plaintiffs could have, and would have, walked away without investing any money if any of their allegations were plausible, *since if even one fact in the Agreement that was different than something Plaintiffs claim to rely upon would have caused them to hit the brakes*. The fact that Plaintiffs still invested, despite being led by a highly experienced transactional attorney makes their claim of justifiable reliance and materiality implausible and insufficient to survive a motion to dismiss.  Plaintiffs fail to rebut these arguments. Defendants also address below the remainder of Plaintiffs opposition arguments relating to justifiable reliance.

REPLY BY DEFENDANTS' REBEL, RIFKIN, AND HILLS GROUP ISO MOTION TO DISMISS 4AC AND TO STRIKE PORTIONS THEREOF

**1.   The Complaint Alleges that Part of the Business of Hills Group Was the Business of Hills One, and Thus Plaintiffs' Cannot Overcome the Anti-Reliance Language.**

Plaintiffs concede that the anti-reliance clauses apply to the business of Hills One. Plaintiffs admit that the Agreement's Section 4.02(e) "does state that Plaintiffs disclaimed reliance on statements by 'any other Member or by any agent or employee of any other Member' (which includes all Defendants) about a specified set of topics." Opp. at 16. Those topics are ***Hills One's business, operations, assets, liabilities, results of operations, financial condition, <u>prospects</u>, and the purchase of membership in Hills One***.  *See id*. Thus the anti-reliance clause applies not just to Hills One's status at the time of the investment, but also the word "prospects" means the diligence/anti-reliance applies to anything then contemplated to be part of the business.

Plaintiffs  argue, however, that the representations that led it to invest in Hills One were all about Hills Group, not Hills One, and so the anti-reliance clause is inapplicable. *See* Opp. at 10.  That is facially implausible, and contradicted both by the allegations of the complaint, which at times conflates the business of the two entities, and is contradicted by the Agreement itself, including because it shows that Hills Group was contributing two operating units to Hills One – which fits within the word "prospects" in the anti-reliance clause.

Accordingly, if the Court rejects the foregoing argument, and finds that at least some of what Plaintiffs alleged about Hills Group is also what Plaintiffs allege about the business of Hills One, it must dismiss all of the claims requiring justifiable reliance.

This is a factual question of the scope of the *scope* of Section 4.02(e)'s anti-reliance clause, and not a legal question about whether it applies.  Although Plaintiffs cite some general case law about anti-reliance clauses, that creates the illusion of a legal dispute

- 5 -

because Plaintiffs ultimately concede that the Agreement is sufficiently specific in stating that Plaintiffs did their diligence about a host of topics for Hills One and did not rely on anything else.  Accordingly, none of the cases cited by Plaintiffs are relevant, or warrant discussion because they are general case law discussion.[1].  The  "scope" of the clause is at the heart of each of Plaintiffs arguments in opposition to Defendants motion to dismiss on the point of justifiable reliance.

Given that Plaintiffs admit that the Agreement disclaims reliance on pre-Agreement statements by and concerning Hills One, Plaintiffs are left with the argument that "the misrepresentations made by Defendants before the Agreement was signed, and on which Plaintiffs' claims are based, ***all related to Defendant HILLS GROUP, and not Defendant HILLS ONE***." Opp. at 10 (emphasis added).

***This argument is contradicted by multiple allegations in the FAC.***  For example, the FAC alleges that***:*** "When Mr. Stein added PACIFIC GREEN and BIG TREE HOLDINGS to the Hills One Agreement, and subsequently delivered the first $1 million on July 19, 2018, *he was relying on the oral and written statements and representations that had been made to him by the Principals about* HILLS GROUP, ***about HILLS ONE***, and about the Principals' business plan to manufacture and market CBD products".  ¶ 98. (Emphasis added).  So there was clearly some overlap in Stein's mind between the

---

[1] For example, Plaintiffs (at 15) cite *FdG Logistics LLC v. A&R Logistics Holdings, Inc*. (Del. Ch. 2016) 131 A.3d 842, 860, *aff'd sub nom. A & R Logistics Holdings, Inc. v. FdG Logistics LLC* (Del. 2016) 148 A.3d 1171. *FdG Logistics* held that an to be enforceable, an anti-reliance provision must be from the perspective of the buyer, rather than a disclaimer of what the seller is not representing. See id at 859-861. The clause at issue here is Section 4.02(e) is from the point of view of the buyers (Members). Plaintiffs do not argue that Section 4.02(e) is anything other than anti-reliance provision from the perspective of the buyer; in fact, as noted, Plaintiffs admit that the clause disclaims reliance my the Members/Plaintiffs about 8 topics related to Hills One.  Opp. at 16. There is no doubt that the Agreement contains an anti-reliance clause enforceable pursuant to Delaware law.

business of Hills One and Hills Group.  And it would make no sense for him to be solely focused on the business of a fellow member of Hills One when Plaintiffs were not investing in that entity, and that entity had no obligation to contribute more money or resources to the Hills One business than stated in the Operating Agreement.

Moreover, the FAC is rife with allegations that Defendants ran a single business and enterprise, both as to its general and specific allegations.  For example, a word search indicates that the word "enterprise" appears on 26 pages of the FAC.  The FAC sometimes uses the term "enterprise" to refer to Hills One, such as in paragraphs 126-130 of the complaint, which are under the headings "Summary of Payments to the Enterprise."  Those paragraphs detail investments by Plaintiffs pursuant to the Agreement, which were payments to Hills One.  For example, FAC ¶ 127 alleges that "On about July 19, 2018, the Principals' *enterprise* received a payment of $500,000 from PACIFIC GREEN and $500,000 from BIG TREE HOLDINGS." (emphasis added). Of course, this totals the initial $1million invested by Plaintiffs into Hills One pursuant to the Agreement, and the other payments detailed are also into Hills One, and not any other entity. *See generally Daniels-Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010).(Courts are not "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010).

The above examples are consistent with general enterprise allegations in the complaint, such as:

- FAC ¶ 15 each of the defendants . . . was the agent, principal, employer or employee of each other defendant, and they were acting within the course and scope of such relationship in doing the things herein alleged, or they

- 7 -

ratified, acquiesced in, consented to or approved each and all of the acts of each of the other defendants, so that each defendant is jointly and severally responsible and liable for the acts alleged herein.

- FAC ¶ 23 Each action in furtherance of the Defendants' enterprise to raise money was undertaken with the knowledge and consent, or the ratification, of all Defendants.

- FAC ¶ 4 [T]he manager of HILLS ONE was HILLS GROUP, and the beneficial owners and designated "Management Team" of HILLS ONE comprised Defendants PAUL FIORE, JAY RIFKIN and ALEX REYTER.

- FAC ¶ 17 In the second half of 2017, Defendants PAUL FIORE, JAY RIFKIN and ALEX REYTER (collectively the "Principals") began work on an enterprise to raise money from a range of individual and institutional sources.

- FAC ¶ 175 As alleged herein, each Defendant participated in operating the fraudulent enterprise and conducting its affairs by making and confirming false and fraudulent misrepresentations to Plaintiffs.

Allegations of a single enterprise are not only made throughout the FAC, but Plaintiffs also rely on them in their opposition brief.  The opposition points to the FAC's enterprise allegations in arguing that Plaintiffs should not have to attribute specific representations to each defendant because it alleges "an overlapping intentionally-designed, specially-created, overlapping web of entities, but FIORE, RIFKIN and REYTER stand behind it all." Opp. at 18-19.  Plaintiffs cannot stand on the corporate distinction between Hills Group and Hills One to escape the anti-reliance clause in the Agreement, while saying the opposite throughout the FAC (and in the opposition).

Fundamentally, the argument that Plaintiffs only relied on representations regarding Hills Group, and not Hills One, is facially implausible because (1) the representations about Hills Group are only relevant to an investment in Hills One if those representations are material to the valuation, business, and operations of Hills One, and (2) those are topics that Plaintiffs concede are covered by the Agreement's anti-reliance clause.  It is facially implausible that Plaintiffs, led by a sophisticated "Super Lawyer" with years of experience in structuring international business transactions and who has made presentations on asset protection for the farmers, producers and retailers of cannabis, gave millions of his client's money to a cannabis start-up entity based on anything and everything *except* the business and "prospects" of that start-up entity.[2] *See also  Iqbal, 556 U.S. at 679, 129 S.Ct. 1937* ("Analyzing the sufficiency of a complaint's allegations is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense.")

Accordingly, the anti-reliance provision bars Plaintiffs claims as a matter of law.

## 2.    The Operating Agreement Contains Facts That Contradict The FAC and Negate The Element of Reliance

Moving Defendants make an alternative argument that even if the anti-reliance language does not bar Plaintiffs' claims as a matter of law, the representations and warranties in the Agreement must, at minimum, be considered in the plausibility analysis as to reliance and materiality.  Plaintiffs do not engage substantially this argument, claiming instead to not understand it (even though they never bothered to contact Defense counsel for clarification after the meet and confer when they said they would look at that argument from the prior Reply).  Opposition at 8:1-3.

---

[2] https://aliantlaw.com/attorney-profile/jacob-stein/

REPLY BY DEFENDANTS' REBEL, RIFKIN, AND HILLS GROUP ISO MOTION TO DISMISS 4AC AND TO STRIKE PORTIONS THEREOF

The point, however, is straightforward. The Agreement contains factual representations, warranties, and terms that are inconsistent with the alleged pre-Agreement representations Plaintiffs have claimed they relied upon. This argument is separate from the argument that Section 4.02(e) operates as a contractual bar to Plaintiffs' allegations of justifiable reliance. Further, the Agreement itself establishes that Plaintiffs were not deceived in the way alleged because -- even if their allegations of pre-Agreement misrepresentations are assumed to be true -- they knew the truth of certain points they allege are material before parting with any money. The Court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F. 3d 1025, 1031 (9th Cir. 2008). Here, the Agreement is attached to the FAC and is incorporated into it. Plaintiffs do not disagree that the Court should consider the Agreement as part of its plausibility analysis as to whether Plaintiffs plausibly plead justifiable reliance and materiality.

The statements in the Agreement are fatal to the deception/misrepresentation-based claims, each of which require justifiable reliance. Plaintiffs' allegations violate the well-established rule that "'A plaintiff's reliance on a defendant's misrepresentation 'must be justifiable' in light of plaintiff's 'own intelligence and information.'" *Quintara Biosciences v. Ruifeng Biztech Inc.* No. 20-04808 N.D. Cal. (Oct. 2020)) (quoting *Hobart v. Hobart Estate Co., 26 Cal.2d 412, 447 (1945)*.

Defendants' position is that any material contradiction between the Agreement and the alleged misrepresentations would have been a red flag that would have stopped the investment if they were indeed material and something Plaintiffs relied upon. At this stage of the pleading (the fifth version), if Plaintiffs implausibly allege justifiable reliance on one fact, it casts doubt on the rest.

- 10 -

Here, the Agreement contradicts allegations in the FAC and undermines the required reliance element including in the following respects. Three investors in Hills One were identified in Schedule A of the Agreement, and they were: Hills Group, and Plaintiffs Pacific Green and Big Tree, with total cash contributions of $2 million. This contradicts Plaintiff's core allegations that Plaintiffs were fooled into investing in Hills One by representations that (1) Defendants were securing additional investors into the so-called enterprise, (2) had ample capital, and (3) were duped by (a) Hills Group's representations in a brochure about the never formed Hemp and Cannabis Opportunities Fund, and (b) by representations of investments made by Hills Group in third party cannabis-related businesses. *See FAC* at ¶¶ 28, 32, 37, 47.

In the opposition, Plaintiffs argue that the FAC expressly alleges that Plaintiffs relied on the representations about the financial condition of Hills Group (which Plaintiffs allege were incorrect). *See* Opp at 11. But in fact, the FAC paragraphs cited for this point discuss the "venture" generally (which the FAC uses refers to both Hills Group and Hills One, as it does with the term "enterprise" or "business"). (¶29). Paragraph 31 alleges that "Mr. Stein's entities, Plaintiffs, eventually would become just the second financial backers in HILLS GROUP, and they would contribute the most money by far." But Plaintiffs invested in Hills One. Plaintiffs did not financially back (invest in) Hills Group at all: the $4.7 million invested by Plaintiffs into Hills One was pursuant to the Agreement. This financial allegation is squarely contradicted by the Agreement and underscores and reinforces that Plaintiffs conflate the business of Hills Group and Hills One whenever convenient.

Another example where the FAC refers to the venture generally is that Plaintiffs allege that the Principals "communicated to" Mr. Stein in May 2018 (before Plaintiffs paid anything) that $5 million was needed to commence operations. *See* FAC at ¶74.

REPLY BY DEFENDANTS' REBEL, RIFKIN, AND HILLS GROUP ISO MOTION TO DISMISS
4AC AND TO STRIKE PORTIONS THEREOF

Plaintiffs contributed $1 million in July 2018. By January 2019, Plaintiffs paid $4.7 million to Hills One. *See* FAC ¶¶ 126-130. Section 5.09 of the Agreement discusses Plaintiff Pacific Green's right to make "additional investments." FAC EX. A at 20-21. The Agreement does not reference, require, or contemplate pending investments by anyone other than Plaintiffs. The Agreement (and the allegation in the FAC that Plaintiffs invested $4.7 million) contradict the core allegation that Plaintiffs invested because they understood Hills Group lined-up other investors. If Plaintiffs' allegations about why they invested in Hills One are to be believed, then the Agreement revealed to them the true facts: that Plaintiffs were the only investors besides Hills Group, and that Plaintiffs would provide the majority of the $5 million in installments that Plaintiffs understood would be needed to get the business going.

According to Plaintiffs, they also relied on pre-Agreement representations about Hills Group's involvement with the Hemp and Cannabis Opportunities Fund (in which Plaintiffs did not invest and which was never formed). Plaintiffs also claim reliance on purported strategic relationships and investments Hills Group claimed to have, but did not, with third parties "Oregon-based New Earth Biosciences; Washington-based POSaBIT; 3C Solutions; Live Love Chill; Caseus Group; Double Beam; Digital Insight; Medpath; Ocean View Media; and CU Wallet." FAC ¶ 38. But these entities, and their connection to the business Plaintiffs actually invested in (Hills One), are not mentioned in the Agreement. Plaintiffs are asking the Court to accept that none of the representations Plaintiffs supposedly relied on are about the business in which Plaintiffs actually invested. Even an unsophisticated investor, let alone an expert transactional lawyer and Managing Partner of an international law firm, if presented with the Agreement, would ask why all these other cannabis businesses are not referenced in the Agreement if Plaintiffs were relying on them. The more plausible conclusion is that none

- 12 -

of these strategic relationships of Hills Group were relied upon or relevant.   The Agreement's failure to address them, combined with the anti-reliance language itself (which includes reference to the "prospects" of the business of Hills One), renders any actual reliance unjustified, unreasonable, and not material.

The only businesses mentioned in the Agreement that allegedly were mentioned prior to its execution are Skyline Brands and NatureRx.  Schedule A in the Agreement states that Hills Group is investing $1 million cash ***plus its interests in these two entities***. Plaintiffs concede it was "true" that Hills Group invested in these companies (FAC ¶ 40), and Plaintiffs do not allege that either business was not folded into Hills One.  Plaintiffs instead allege that the value of these entities were exaggerated in a brochure about the Hemp and Cannabis Opportunities Fund, a hypothetical entity never created.   The Agreement, entered into five months after Plaintiffs claim to have been sent that brochure, makes no representations about what these interests are worth. Moreover, Plaintiffs have expressly disclaimed (Opp. at 13, n. 5) in their opposition – as an error on the part of their counsel -- the FAC's allegation that the Agreement represented that the interests were worth $9 million, explaining that this error occurred because an earlier draft of the Agreement referenced that valuation. But this means that Plaintiffs knew that the pre-Agreement valuation of Hills Group's interest in Skyline and NatureRx was either disavowed and/or should not have formed the basis of entry into the Agreement.   The Agreement does not reference the February 2018 valuation figure, and it is implausible that Plaintiffs would rely on valuation figures made five months earlier that are not included in the Agreement.  Any actual reliance on such pre-Agreement representations to invest millions into Hills One, after ample opportunity to investigate, would not be justifiable, especially by a self-proclaimed international transactional venture formation and asset protection expert.

REPLY BY DEFENDANTS' REBEL, RIFKIN, AND HILLS GROUP ISO MOTION TO DISMISS 4AC AND TO STRIKE PORTIONS THEREOF

Plaintiffs also argue that they had no duty to investigate the alleged fraudulent statements because the Agreement only required Stein (on behalf of Plaintiffs) to perform due diligence regarding Hills One.  *See* Opp. at 16.  As discussed above, this distinction between Hills Group and Hills One is contradicted by the Complaint and is facially implausible.  But in addition to that, the motion to dismiss makes the point (at 9, 11) -- which Plaintiffs did not address -- that the FAC fails to indicate that *any* due diligence was undertaken by Plaintiffs, including *even as to Hills One*.  The Complaint implausibly pretends that the sophisticated transactional lawyer -- who formed, funded, and manages the Plaintiff entities -- blindly gave $4.7 million to a cannabis startup without doing any diligence at all. Had Plaintiffs done the due diligence into Hills One that they represented in the Agreement to have done, they unavoidably would have had to investigate Hills Group because Hills One had no existing operations and was managed by Hills Group, which itself was allegedly controlled by the Principals.

Moreover, as part of its capital contribution, Hills Group signed over its interests in Skyline Brands LLC and NatureRX to Hills One. *See* FAC Ex. A, Schedule A. Therefore, Plaintiffs had an obligation to investigate these assets that are in the schedule as Hills One assets.  Further, Skyline and NatureRX were to be operating components of Hills One; therefore, Plaintiffs' money was going to spent on their operations.  Thus, Plaintiffs' representation that they did the investigation into Hills One's assets and "prospects" is a representation that they did an investigation of these operating assets.

Plaintiffs' opposition also argues that while Mr. Stein may have had a fiduciary duty to investigate Hills Group as part of his duties to Mr. Stein's own investor clients, that duty of diligence is not relevant to the instant motion to dismiss. *See* Opp. at 17. Plaintiffs are wrong. That Mr. Stein had an independent duty to investigate Hills Group (which Plaintiffs' opposition all but admits) is relevant to the plausibility of the FAC's

- 14 -

allegations for the reasons discussed above.  The FAC argues that aspects of Hills Group were part of the business/enterprise that Plaintiffs were investing in.  This attempted artificial line drawing is just not plausible.  The most plausible inference is that (1) Stein is indeed a highly experienced transactional lawyer, (2) he negotiated the operating agreement with care, (3) did sufficient due diligence before investing his and his client's money, and (4) he understood the risks and accepted them.  And that he is trying to recover money through what is essentially a strike suit, by using the threat of RICO damages and fraud to shift the investment risk.

The Motion to dismiss also highlights a related point (at 12) that is ignored in the opposition: that contrary to those parts of the FAC that paint Plaintiffs as passive outside investors, the Agreement granted them significant rights, including managerial rights, and provided them with compensation. The Agreement was not an adhesion contract; Plaintiffs negotiated their contract and secured for themselves significant rights and compensation. The Court can, and should, take this into account in applying the *Twombly* plausibility standard.  It is not plausible that a sophisticated attorney and investor like Stein would carefully negotiate various approval and information rights for Plaintiffs, and then ignore them completely and invest further funds based on oral repetitions of vague allegations.  The more likely and plausible inference is that the carefully structured language for phased investments contemplated that Plaintiffs would use their approval and information rights to monitor how money was spent, and only invest more money if they were satisfied with the progress.  Nothing in the FAC provides a basis for a difference plausible inference, providing yet another reason why the allegations fail the plausibility standard.

REPLY BY DEFENDANTS' REBEL, RIFKIN, AND HILLS GROUP ISO MOTION TO DISMISS 4AC AND TO STRIKE PORTIONS THEREOF

### 3. Plaintiffs' Claims That Defendants Did Not Spend "Enough" Time Are Impermissibly Vague and Conclusory and Must Be Dismissed

On a motion to dismiss Courts should "discount[] conclusory statements, which are not entitled to the presumption of truth, before determining whether a claim is plausible." *Chavez v. United States,* 683 F.3d 1102, 1108 (9th Cir.2012). The motion to dismiss established that the Agreement provided that the "Management Team" will *not* be managing Hills One on a full-time basis, and that they had other business they would tend to. MTD at 10. In their opposition, Plaintiffs ignore prior allegations/statements about the full-time work, and instead say the problem was Defendants did not spend enough time on the business. Plaintiffs argue that the FAC properly alleges the Management Team did not spend sufficient time on the day-to-day running of the business, and instead spent too much time and "energy" on other ventures. *See* Opp. at 12-13 (citing FAC at ¶ 135). These are bald conclusory allegations lacking pleaded supporting facts. Allegations that Defendants spent time on other ventures do not plausibly establish liability because the Agreement makes clear the Management Team would spend time on other ventures. They do not meet the pleading standard for fraud. How much time did Defendants spend, versus how much should they have spent? What factual basis is there for this allegation, and how is it tied to the investment loss? None of these necessary facts are alleged in the FAC.

Plaintiffs' argument on this point betrays the impermissible "fraud-by-hindsight*,"* *ipso-facto* nature of this entire case: we lost our investment, so therefore we were defrauded, because Defendants must not have spent enough time running the business, and there "must be some redress," even though "some claims are not viable." *See* Opp. at 5. Plaintiffs are business entity investors managed by Mr. Stein, a sophisticated

- 16 -

transactions lawyer, that invested in a startup business operating in an emerging cannabis industry which they knew is speculative and exists in a legal and regulatory minefield. The investment was lost due to a variety of factors, starting with criminal charges and confiscation of equipment because of an error by a third-party processor in Massachusetts.[3]  That the investment was lost does not support a plausible inference that Defendants did not devote enough time to make it work, or that there was any wrongdoing.

### 4.   The Anti-Reliance Clause Applies to the Post-July 2018 Representations, Directly and As Part of the Plausibility Analysis

Plaintiffs argue (Opp. at 17) that the Agreement and its anti-reliance clause is backwards-looking only and so it can only disclaim-reliance on representations already made at the time of the $1 million investment, and is inapplicable to the later investments of $3.7 million.

Plaintiffs' interpretation is not the most reasonable interpretation of the Agreement as a whole or of the anti-reliance clause in particular. The Agreement contemplates that Plaintiffs will make purchases after the Agreement's effective date of July 2018.  *See* Cpl. Ex. A at 20 ("5.09 Additional Investment.")  "Post-Agreement," a convenient shorthand, is inaccurate because the Agreement did not terminate upon signing; it set out the ongoing rights and obligations of the parties relating to the business of Hills One, and provided specifically for more investments.

_____

[3] Defendants maintain that the facts leading up to the criminal charges as explained in the Phasex District court opinion and moving papers, are undisputed matters of public record – and not just the fact of the opinion itself.  *C.f., Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

- 17 -

The anti-reliance provision (Section 4.02(e)) states "[t]he determination of such Member to acquire units has been made by such member …" Cpl. Ex. A at 15.  The only reasonable interpretation of this provision is that Members are disclaiming reliance on the enumerated topics for each acquisition of units, and not, as Plaintiffs argue, that reliance is disclaimed as to the first acquisition of units but not subsequent acquisitions, a proposition at odds with the language itself and both common sense and business sense.

In any event, even if the clause does not apply as a matter of law to the subsequent investments, the representations and warranties establish a baseline for the plausibility analysis.  Again, it is inconceivable that Stein would authorize the investment of another $3.7 million of client funds without using his information and approval rights to make sure that he was comfortable with how the money already invested had been spent and the plan for the new money. That is the most plausible inference, and another reason why post July 2018 claims are deficient.

Defendants also specifically reiterate their argument that the post July 2018 fraud claims lack the required specificity, for the reasons explained in the other motions to dismiss.  *See, e.g., Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) ("To satisfy Rule 9(b), a pleading must identify 'the who, what, when, where, and how of the misconduct charged'").

## III.   THE CIVIL RICO CLAIM STILL FAILS

### A.   Under *Shulman v. Kaplan*, Plaintiffs Lack Standing to Allege a RICO Violation.

As noted in the moving papers and the introduction to this Reply, the Hills One Operating Agreement at Section 41.6 and multiple paragraphs of the FAC indicate that Plaintiffs invested in "cannabis-related commerce" and thus Plaintiffs lack statutory

- 18 -

standing for a RICO claim. *Shulman v. Kaplan*, 58 F.4th 404, 406 (9th Cir. 2023). Plaintiffs do not rebut these points.

The moving papers also rebutted the  FAC's new attempted focus on CBD products and Plaintiffs' line edit to paragraph 14.  Plaintiffs also do not substantively address the point in the moving papers that the Court can take judicial notice that the manufacturing process for this particular business involves items that are illegal under federal law, as did the District Court in Oregon, and that public records further prove that Defendants engaged in a cannabis-related business, that included  illegal levels of THC.  Similarly, Plaintiffs do not address Defendants response to Plaintiffs argument that this business was just a sham to raise money.  Instead, Plaintiffs largely repeat their general point that at some point, the business intended to produce and sell legal CBD products or that it was never a cannabis business -- while ignoring the allegations from the FAC that Defendants use to prove that even Plaintiffs acknowledge it was at least partially engaged in a cannabis business.

Turning specifically to what the opposition argues, the salient point for *Shulman* is that Plaintiffs here thought they were investing in a cannabis business.  And Plaintiffs admit that some cannabis business did start.  The rest of Plaintiffs' argument is inconsistent with *Shulman*, since someone could always try to distinguish Schulman with an argument that the cannabis business was not successful.  Using the heroin analogy from *Schulman*, if someone invested in a heroin business, and the person running the business intended to deny the investor of their share (as criminals might well do), they still cannot bring a RICO claim -- but Plaintiffs view would let them do so under their proposed exception to Shulman.  Plaintiffs position is unworkable and unsupported by *Shulman's* reasoning.

Plaintiffs argue that CBD is not illegal under federal law and thus Plaintiff did

- 19 -

not invest in an illegal business.  This attempt to shift the analysis misstates multiple facts and adopts inappropriate analogies.  *Shulman* is about cannabis commerce.  The Hills One Agreement refers to cannabis commerce.  That is what Plaintiffs were investing in.  The complaint also refers to the cannabis business.  Plaintiffs do not deny that.

The complaint supports this view, alleging that as part of the Hills One business Reyter told Stein on November 5, 2019 that "*a harvest had been completed*."  FAC 188.  That "harvest" is of cannabis plants that are not legal under federal law.  That is the first step in the business.  And further, Reyter tells Stein that "cash flow was imminent," which impliedly would be from selling that cannabis to someone else to process (given the loss of the ability to do their own processing due to the criminal charges as of November 2019).  Thus, Stein understood that the business including harvesting illegal cannabis, and then selling it.

These allegations from the complaint, and regulations from the California Department of Cannabis Control, confirm that a lawful CBD product is simply one possible end result of a cannabis business.[4]  One does not get to a lawful CBD product until one does a lot of work with federally illegal Cannabis (the only hemp worth processing are those too high in THC).

_____

[4] As explained by the California Department of Cannabis Control:  "Manufacturers extract cannabinoids and terpenes from cannabis plants and make products out of the extract. . . .  Cannabis manufacturers use techniques and processes common in other types of consumer product manufacturing. Manufacturing steps differ based on the type of manufacturing, but generally include:
  • Extraction of cannabinoids
  • Post-processing (refinement) of cannabis extract
  • Infusion of extract or plant material with other ingredients
  • Packaging and labeling cannabis products."
https://cannabis.ca.gov/licensees/manufacturing/ (last accessed July 4, 2023).

REPLY BY DEFENDANTS' REBEL, RIFKIN, AND HILLS GROUP ISO MOTION TO DISMISS 4AC AND TO STRIKE PORTIONS THEREOF

Plaintiffs also try to argue against the application of *Shulman* to the Hills One cannabis business by trying to make an analogy to a RICO case for other illegal products.  This case is not about that, and whether *Shulman* should be extended in certain contexts to illegal businesses in other areas is another strawman.

**B.    Plaintiffs Posit Mere Speculation for Actual and Proximate Causation.**

Plaintiffs fail to establish actual and proximate causation as detailed in the moving papers.  Plaintiffs respond by again conflating information about Hills One and Hills Group.  When Plaintiffs argue that that "Defendants' purported business was really nothing but a collection of empty corporate shells," (Opp at 24:29), Plaintiffs must be combining as one "business" Hills One, Hills Group, and the 3 separate LLCs of the principals (One Eleven, Rebel Holdings, and Tudor Capital) since Plaintiffs' only allegations about corporate shells concerned those entities.  Plaintiffs did not allege, for example, that Hills One was a collection of empty shells.

Money was not delivered to Defendants, but instead to Hills One, an entity.  And all of the allegedly false statements Plaintiffs now say were made concerned Hills Group and not Hills One .

Plaintiffs also argue that their investment was "essentially worthless and their injury complete as soon as they delivered each payment."  This makes no sense and violates basic principles of corporate law and accounting.  Hills One was a startup. Yet it got far enough along to harvest/obtain enough raw material to send to Phasex to process because Hills One's own processing equipment was not yet operational.  It is not plausible that a lawyer like Stein, who is a transactional expert, would make further phased, elective investments without confirming for himself that the prior money was being used appropriately and the business was on track.  Also, technically, each time money was invested it was in return for membership interest.  So it was not wasted or

lost upon the investment.  The valuation of a membership interest is never static, and claims for loss of value of a membership interest is derivative in any event, as noted in the Fiore moving papers.

Plaintiffs cite to *OCM Principal Opportunities Fund* for general causation principles.  Defendants included a detailed refutation of that case in their moving papers, which Plaintiffs do not address.  As further applied here, OCM requires a misrepresentation of the entity's financial condition at the time of the investment *plus* plausible allegations that the failure of the business was caused by that misrepresentation. Here, Plaintiffs now say that they are not alleging a misrepresentation of the Hills One financial condition, but instead of the Hills Group financial condition. Plaintiffs position makes it impossible to establish causation.  Because Plaintiffs invested in Hill One, and not Hills Group – and Hills Group had no contractual obligation to invest more money than stated in the Agreement (which was still less than the $5 million the business needed) -- there is no proximate causation between any alleged misrepresentation about the financial condition of Hills Group, and damages to the membership interest purchased in Hills One.

Further, the intervening event of the Massachusetts company making an error on the return shipment of processed cannabis oils, leading to criminal charges and forfeiture, completely defeats causation.  Even though Defendants have raised this point since the January Rule 26 report, the complaint still contains no allegations to address these facts, which are matters of public record and Plaintiffs have not objected to their consideration by this Court.

REPLY BY DEFENDANTS' REBEL, RIFKIN, AND HILLS GROUP ISO MOTION TO DISMISS
4AC AND TO STRIKE PORTIONS THEREOF

**C.     Plaintiffs Do Not Cite Legal Authority to Show an Actionable Pattern.**

> **1.     Plaintiffs New Allegations Fail to Establish The Continuity Requirement (Open-Ended Continuity).**

Plaintiffs do not defend most of their allegations of continuity, but make up new ones.  They do not discuss/dispute the lack of plausibility about raising new money for this business for the reasons Moving Defendants explain in detail in their motion papers, and Defendants stand by those arguments. Further, Plaintiffs again refer to decks/proposals of Hills Group, instead of representations about Hills One.

Plaintiffs' argument here is still essentially that Reyter, Fiore and Rifkin might raise money for other ventures from other investors because they are entrepreneurs.  It cannot be enough to be an entrepreneur, with some disaffected investors in a business, to create open-ended continuity.

> **2.     Plaintiffs' Theory of a "Closed-Ended" RICO Scheme also Fails.**

Plaintiffs admit that a close ended pattern should exist for at least two years and target a wide range of victims.

Here, the FAC essentially admits the alleged "scheme" lasted less than two years by stating the business ran out of money before then.  The FAC states:  "In less than two years the Principals wasted the entire $5.7 million they extracted from Plaintiffs and Freedom House."  FAC 138.  That allegation further supports Defendants' position that the business was over before 2 years (since it had no money to operate). The June 2020 date that Plaintiffs  want to use is just the date of a meeting with Stein; the allegations and matters for judicial notice support an inference that the alleged scheme ended long before that.

Second, there are no allegations to satisfy the element that a "wide range of victims" were targeted.

**IV.    CONCLUSION**

      For the reasons discussed above and in the moving papers, Defendants respectfully request that the Court grant their motions to dismiss and/or to strike.

/ / /

Dated: July 6, 2023                              AZAR LAW GROUP, APC

                                            */s/ David E. Azar*

                         By: _____
                              David E. Azar
                              Attorneys for Defendants REBEL
                              HOLDINGS, LLC and JAY RIFKIN

                                BUCHALTER

                                /s/ Mark Cramer

                       By:_____
                              Mark Cramer
                              Attorneys for Defendant
                              HILLS GROUP, LLC

1

## SIGNATURE ATTESTATION

2
I, David E. Azar, hereby attest pursuant to L.R. 5-4.3.4(a)(2)(i) that all other signatories

3
listed, and on whose behalf this REPLY BY DEFENDANTS REBEL HOLDINGS LLC,

4
JAY RIFKIN, AND HILLS GROUP, LLC IN SUPPORT OF THEIR MOTION TO

5
DISMISS FOURTH AMENDED COMPLAINT, MOTION TO STRIKE PORTIONS

6
THEREOF, AND JOINDER IN MOTIONS TO DISMISS FILED BY OTHER

7
DEFENDANTS is submitted, concur in the content and have authorized its filing.

8

9
 Dated: July 6, 2023                                    AZAR LAW GROUP, APC

10
                                                           */s/ David E. Azar*

11
                                        By: _____

12
                                              David E. Azar
                                              Attorneys for Defendants REBEL

13
                                              HOLDINGS, LLC and JAY RIFKIN

14

15
## L.R. 11-6.2 CERTIFICATION OF COMPLIANCE

16
        The undersigned, counsel of record for defendants REBEL HOLDINGS, LLC

17
and JAY RIFKIN, certifies that this brief contains 6990 words, which complies with

18
the word limit of L.R. 11-6.1.

19

20
 Dated: July 6, 2023                                    AZAR LAW GROUP, APC

21
                                                           */s/ David E. Azar*

22
                                        By: _____

23
                                              David E. Azar
                                              Attorneys for Defendants REBEL

24
                                              HOLDINGS, LLC and JAY RIFKIN

25

26

27

28

CERTIFICATIONS